COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Baker, Benton, Coleman,
     Koontz,[*] Willis, Elder, Bray and Fitzpatrick
Argued at Richmond, Virginia


ROBERT MICHAEL EWING

v.        Record No. 0281-94-1              OPINION
                                   BY JUDGE JOSEPH E. BAKER
PATRICIA LYNN EWING                    SEPTEMBER 5, 1995


UPON A REHEARING EN BANC


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
        Russell I. Townsend, Jr., Judge

    Lawrence D. Diehl for appellant.

    Timothy P. Sceviour (Abrons, Fasanaro & Sceviour,
    on brief), for appellee.


     Robert Michael Ewing (husband) appeals from a decree of the

Circuit Court of the City of Chesapeake (trial court) that

awarded Patricia Lynn Ewing (wife) a divorce, custody of the

child born of their marriage, and support monies.  In his initial

appeal to this Court, husband contended that the trial court

erred when it (1) granted wife a divorce on the ground of his

adultery, (2) failed to award joint custody of the child and

limited his visitation rights, (3) inequitably divided visitation

on holidays, (4) failed to apply the "shared" custody provisions

of Code § 20-108.2, and (5) failed to consider his child care

expenses, travel expenses, and tax consequences of the parties as

---

[*]Justice Koontz participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

required by Code § 20-108.1.  In a February 28, 1995 unpublished opinion, all of those issues were decided adversely to husband by a three-judge panel of this Court, one judge dissenting.  From that opinion, husband petitioned for a rehearing en banc requesting only that we define "a day for the purposes of the interpretation of Virginia Code Ann. Section 20-108.2(G)(3)(c)."[1]  We agreed to hear that issue en banc.

In husband's brief, filed after his request was granted, he restated the issue as follows:

Did the trial court error [sic] in its award of child support by failing to apply the shared custody child support guidelines pursuant to Virginia Code Ann. Section 20-108.2(G)(3)(c) and in its interpretation of the term "day" as requiring a full 24 hour period for purposes of said statute?

Code § 20-108.2, which contains the guidelines for the determination of child support, reads in pertinent part as follows:

(G)(3)  In cases involving shared custody, the amount of child support to be paid is the difference between the amounts owed by each parent to the other parent, with the parent owing the larger amount paying the difference to the other parent.

\* \* \* \* \* \* \*

(c) . . . The shared custody rules set forth herein apply when each parent has physical custody of a child or children born of the parties, . . . for more than 110 days of the year.

---

[1] Husband did not request a rehearing on the adultery or other issues decided by the panel.  Accordingly, the panel's decision on those issues is unaffected by this decision.

- 2 -

(Emphasis added).  The trial court's decree awarded "legal custody" to wife and granted the following visitation rights with child to husband:

> [Husband is reserved visitation rights] every other weekend from Friday evening at 6:00 o'clock p.m. until Sunday evening at 6:00 o'clock p.m. and Tuesday night each week including overnight if arrangements by [husband] can be made to deliver the child to her school the following morning; four weeks during the summer recess, two of which to be consecutive to be the last week in June and first week in July; the week before Labor day, but not Labor Day weekend unless it is [husband's] weekend for visitation and the 3rd week in July; that [wife] shall have two consecutive weeks with the child in the summer when there will be no visitation by [husband] and that while two of the four weeks when the child is with [wife] in the summer will be consecutive, the entire four weeks will not be consecutive unless agreed by the parties; and an equal division of the major holidays alternating said holidays on an annual basis; the Christmas schedule is to be from the school recess until December 24th at 12:00 noon with [wife]; 12:00 noon until 2:00 p.m. December 25th with [husband]; 2:00 p.m. December 25th until 6:00 p.m. December 27th with [wife], and the remainder of the Christmas recess to be with [husband]. Unless the parents can mutually agree on another schedule, then the time shall alternate during Christmas 1993 and continue on an alternating basis hereafter.

Husband concedes that if the Black's Law Dictionary[2] definition of a day, "a period of time consisting of twenty-four hours and including the solar day and the night," is the definition of "day" the General Assembly intended when Code

---

[2]Black's Law Dictionary 357 (5th ed. 1979).

§ 20-108.2(G)(3)(c) was enacted, then he would not be entitled to the benefits of the shared custody rule. However, he argues that he is entitled to credit as a "day" for periods during which he has visitation rights that are for less than twenty-four hours. The trial court held that "while Code Section 20-108.2.G.3(c) sets a threshold figure of 110 days to trigger the 'shared custody rules,' it is the opinion of the Court that it was the intent of the General Assembly that these be full twenty-four hour (24) hour [sic] days." In his brief and during his en banc oral argument husband argued that a "strict interpretation of 'day' (as contained in Code § 20-108.2) requiring a full 24 hour period of time would be unduly restrictive" and suggested that we should declare that when enacting that Code section, the General Assembly intended a day to be defined as follows:

> The majority of the time as between each parent during any 24 hour period which period shall include an overnight, the said 24 hour period commencing at the time of the physical transfer of said child to the parent exercising said visitation, but excluding from said computation or times to either parent any time the child is attending school, is placed in non-parent day care, or placed with a third party.

We reject that contention. We believe that the General Assembly intended that for the purposes of applying the provisions of Code § 20-108.2(G)(3)(c), a day should be defined as any continuous twenty-four hour period. We hold that husband has not shown by this record that the decree awarded him visitation rights for "more than 110 days of the year," and,

- 4 -

therefore, the trial court was not required to apply the "shared custody" provisions of that Code section.

For the reasons stated, the judgment of the trial court is affirmed.

<u>Affirmed.</u>

Elder, J., with whom Benton and Koontz, J.J., join, dissenting.


I respectfully dissent from the majority opinion, which defines a "day" as a continuous twenty-four hour period. Instead, as I stated in my separate opinion accompanying the panel's decision, I would define a day for purposes of the application of Code § 20-108.2(G)(3)(C) as "the majority of a twenty-four hour period, including an overnight."

While I disagree with the majority's definition of a "day," I applaud its decision to adopt a definition that courts may uniformly apply, something the panel majority declined to do. Unfortunately, the majority's definition is too strict. In my view, a "day" should be defined in a fashion that equitably accounts for the actual time each parent spends with his or her child. The majority states that the Black's Law Dictionary definition of a "day" reveals the General Assembly's intended definition. However, Black's lists multiple definitions of a "day." For example, "day" is also defined as follows:

> The whole or any part of period of 24 hours
> from midnight to midnight. . . .

> \* \* \* \* \* \* \*

> An artificial period of time, computed from
> one fixed point to another twenty-four hours
> later, without any reference to the
> prevalence of light or darkness. . . .

> The period of time, within the limits of a
> natural day, set apart either by law or by
> common usage for the transaction of
> particular business or the performance of
> labor; as in banking, in laws regulating the

- 6 -

> hours of labor, in contracts for so many "days work," and the like, the word "day" may signify six, eight, ten, or any number of hours.

Black's Law Dictionary, 396 (6th ed. 1990).  It is unclear to me how the majority arrived at its determination that one of several of the Black's definitions supplies the General Assembly's intent, and, as I stated earlier, the majority announces a standard that is too strict.

The facts of this case reveal that for mid-week visitations, daughter was picked up by husband from school, slept overnight at husband's residence, ate breakfast with husband, and was returned to school by husband.  After school, daughter went to day care, where wife later picked her up.  I believe it is unfair to hold that husband should not have been credited with a "day's" visitation in such instances, simply because daughter attended school during a portion of the twenty-four hour period following the time he gained physical custody of the daughter.  I do not believe that the General Assembly meant for courts to apply the definition of a "day" so rigidly.

My definition of a "day" comports with the majority of states that have addressed the shared custody issue.  These states have used "overnight" as the standard with which to determine whether parents have shared custody of a child.  See, e.g., Colo. Rev. Stat. § 14-10-115(8) (1994) (stating "shared physical custody" means that each parent keeps the child overnight for more than ninety-two nights of the year); Idaho

- 7 -

Code Rules Civ. Proc., Rule 6(c)(6) (1993) (stating a determination of "shared physical custody" involves whether a child spends more than 35% of overnights with a parent in a year); Md. Code Ann., Fam. Law § 12-201 (1994) (stating "shared physical custody" means that each parent keeps the child overnight for more than 35% of the year).

The parties agreed at trial that if the court were to count daughter's midweek visitations with husband as "days," husband would have exceeded the 110 day threshold.  Therefore, I would reverse the trial court's child support order and remand the order for a reconsideration based on Code § 20-108.2's shared custody guidelines and the definition of a "day" found herein.